UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| ANNISSA COLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-377 |
| | ) |
| CITY OF ALCOA, TENNESSEE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendant Jennifer Russell's Motion to Dismiss [doc. 27], Defendant Jennifer Russell's Brief [doc. 28], Plaintiff Annissa Colson's Response in Opposition [doc. 44], and Defendant Jennifer Russell's Reply [doc. 45]. For the reasons herein, the Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

Plaintiff Annissa Colson ("Ms. Colson") alleges that one evening she was involved in a car accident and that Officer Dustin Cook ("Officer Cook") and Officer Arik Wilson ("Officer Wilson"), both of the Alcoa Police Department, arrested her on charges that include driving under the influence and reckless endangerment. [Compl., doc. 1, ¶ 5]. Ms. Colson claims that, while at the scene of the accident, she consented to a blood alcohol test and that Officer Cook and Officer Wilson drove her to Blount Memorial Hospital for the test. [*Id.*]. She alleges, however, that she withdrew her consent once they arrived at the hospital, causing Officer Cook and Officer Wilson to instruct her to get back into their

patrol vehicle. [*Id.*]. At that point, Ms. Colson, who claims to suffer from multiple anxiety disorders including "severe panic disorder," alleges that she experienced a "crippling panic attack, gasping for breath, in obvious distress" and asked Officer Cook and Officer Wilson to let her breathe. [*Id.* ¶¶ 1, 5]. "I need to breathe. Please let me breath," she allegedly said to them. [*Id.* ¶ 56]. According to Ms. Colson, who refers to herself as "diminutive," Officer Cook and Officer Wilson believed that she was resisting their commands and responded by forcing her back into their patrol vehicle. [*Id.* ¶ 6]. She claims that Officer Cook pulled her into the patrol vehicle from inside while Officer Wilson pushed her into it, and in the process, Officer Wilson thrust his knee into her knee and caused it to "pop." [*Id.* ¶¶ 6–7].

Once Ms. Colson was inside the patrol vehicle, she was allegedly "screaming in pain and crying for her mother." [*Id.* ¶ 9]. Ms. Colson claims that Officer Cook then contacted his supervisor, Lieutenant Keith Fletcher ("Lieutenant Fletcher"), and requested guidance on how to proceed, including advice as to whether they should take Ms. Colson to have her knee examined by a medical professional. [*Id.*]. Lieutenant Fletcher allegedly told them to take Ms. Colson to Blount County Jail, where the staff nurse could check her knee and conduct a mandatory blood draw. [*Id.* ¶¶ 9, 64]. According to Ms. Colson, they transported her to Blount County Jail, and Defendant Jennifer Russell ("Nurse Russell")—the jail's nurse—and others met her there. [*Id.* ¶¶ 10, 11, 65].[1] Ms. Colson claims that as they escorted her through the jail, she was screaming in pain because of her knee, fell to the floor, and had to be lifted to her feet. [*Id.* ¶ 66]. She alleges that she was brought to a

---

[1] Ms. Colson, in her Complaint, notes that Officer Cook told another officer at Blount County Jail that Ms. Colson had "ripp[ed] the rubber out of his car door." [Compl. ¶ 67].

2

room, surrounded by officers, and strapped into a "restraint char." [*Id.* ¶¶ 10, 66–67]. At that point, Nurse Russell allegedly performed "an abbreviated" and "slipshod" exam of her knee, during which she instructed Ms. Colson to "do a series of exercises," compared her knees, saw no swelling, and found no "visible injury." [*Id.* ¶¶ 68, 171]. She allegedly left the room and returned later but only to draw her blood. [*Id.* ¶¶ 11, 69]. Ms. Colson alleges that she remained fastened in the restraint chair for roughly another five hours, having received no medication to ease the pain in her knee or a brace. [*Id.* ¶¶ 68, 75, 171].

Ms. Colson asserts that after she was released from Blount County Jail, she learned that she had suffered "a tibial plateau fracture, a torn ACL, [and] a torn LCL," which required surgery and months of post-operative therapy. [*Id.* ¶¶ 16, 78]. She also maintains that she endured "substantial mental anguish." [*Id.* ¶ 16]. As a result, she has filed this lawsuit against the City of Alcoa, Tennessee; Blount County, Tennessee; and officers of these local governments in their official and individual capacities, bringing several claims under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and alleging violations of her constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. [*Id.* at 32–53]. Ms. Colson implicates Nurse Russell in several of these claims, alleging the unlawful and excessive use of force (Count Four), inadequate medical treatment (Count Nine), and failure to protect (Count Ten) in violation of § 1983. [*Id.* at 37–38, 48–53]. She also brings claims under Tennessee common-law against Nurse Russell, including one for intentional infliction of emotional distress (Count Twelve) and one for negligence (Count Thirteen). [*Id.* at 54–56]. Nurse Russell now moves for dismissal of these claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

## III. ANALYSIS

Section 1983 permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant "can be held liable only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: (1) the defendant deprived the plaintiff of a constitutional right or a federal statutory right and (2) the defendant deprived the plaintiff of one of these types of rights while acting under color of state law (i.e., state action). *Id.* at 511; *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). "Absent either element, a section 1983 claim will not lie." *Christy*, 103 F.3d at 511.

### A. Count Nine: Failure to Provide Adequate Medical Care

In Count Nine, Ms. Colson asserts that Nurse Russell's alleged failure to provide her with adequate medical care resulted in an abridgment of her constitutional rights under the Eighth Amendment. [*See* Pl.'s Resp. at 2]. The Eighth Amendment prohibits cruel and unusual punishments, U.S. Const. amend. VIII, and under the Eighth Amendment, prisoners have a constitutional right to medical care, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When a prison official is deliberately indifferent to a prisoner's serious medical needs, that official violates the prisoner's Eighth Amendment right to medical care. *Id.* at

104–05; *see Grose v. Caruso*, 284 F. App'x 279, 284 (6th Cir. 2008) ("[I]t is well-settled that lack of proper medical treatment can constitute an Eighth Amendment violation." (citations omitted)). Also, "it is undisputed that . . . nurses are subject to suit under § 1983" if they are deliberately indifferent to a prisoner's Eighth Amendment rights while acting under color of state law. *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).[2] In moving the Court to dismiss Count Nine, Nurse Russell relies on a twofold argument, contending that Ms. Colon's allegations do not equate to deliberate indifference and that she is entitled to qualified immunity. [Def.'s Br. at 9–21].

    *1. Deliberate Indifference to a Serious Medical Need*

A claim under the Eighth Amendment has two elements, one objective and one subjective. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective element, a prisoner must show that he had a medical need that was, from an objective standpoint, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation omitted). Under the subjective element, he must show that a prison official was (1) aware of facts supporting an inference that his medical need posed a substantial risk of serious harm and (2) actually drew this inference but chose to disregard the risk. *Id.* at 837; *Comstock*, 273 F.3d at 703.

---

[2] Nurse Russell does not challenge whether her alleged conduct occurred under color of state law. [*See* Def.'s Br. at 1–26; Def.'s Reply at 1–9].

i. The Objective Element

A medical need is "sufficiently serious" when it "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*, 529 F.3d at 518 (quotation omitted). In maintaining that Ms. Colson does not satisfy the objective element, Nurse Russell claims that no layperson could have easily recognized Ms. Colon's injury as one that required a physician's attention. [Def.'s Br. at 12]. Ms. Colson, however, describes Nurse Russell's position as "ridiculous[]." [Pl.'s Resp. at 4]. She highlights her alleged knee surgery and her physician's order of months of rehabilitative therapy. [*Id.* at 5, 10]. She also contends that she manifested "innumerable warning signs" of a serious knee injury, which would have compelled even a layperson to seek out a physician. [*Id.* at 5].

Ms. Colson alleges facts from which the Court, when it accepts her allegations as true, can reasonably infer that an objective layperson would have easily recognized that her injury required a physician. For instance, Ms. Colson alleges that Officer Cook called his superiors about Ms. Colson's injury, and in response to that call, Nurse Russell was ready and waiting to receive Ms. Colson at the jail—a response from which the Court can infer that Officer Cook's superiors informed Nurse Russell of an injury that demanded immediate attention. [Compl. ¶¶ 9–11, 64–65]. Ms. Colson then maintains that she fell to the floor as she was escorted through the jail—while, importantly, screaming about her knee—and required physical support to regain her posture. [*Id.* ¶ 66]. Ms. Colson's alleged inabilities to walk and stand, coupled with her complaints of pain, are obvious signs of physical distress that demand a physician's medical care, if not a physician's urgent

medical care. *Cf. Taylor v. Franklin County*, 104 F. App'x 531, 538 (6th Cir. 2004) (stating that a plaintiff's "debilitating immobility" was one symptom that indicated a serious problem, even if the defendants did not believe him); *see Gray v. Dorning*, No. 99-5212, 1999 WL 1336118, at *1 (6th Cir. Dec. 20, 1999) (determining that a broken bone is a serious medical need); *Moore v. United States*, No. 07-14640, 2008 WL 4683425, at *2 (E.D. Mich. Oct. 22, 2008) ("If a lay person saw the way in which [the plaintiff] walked, he or she could easily recognize that [he] needs medical attention."). In fact, earlier in the night, some of these same symptoms allegedly caused Officer Cook to consider whether he needed to take Ms. Colson to the hospital. [Compl. ¶¶ 9, 64]. Ms. Colson therefore pleads adequate facts showing that she had a sufficiently serious medical need, satisfying the objective element of a claim under the Eighth Amendment.

ii. The Subjective Element

Nurse Russell next contends that Ms. Colson's claim requires dismissal because it lacks any allegation that she had subjective disregard for Ms. Colson's alleged medical need. [Def.'s Br. at 13]. In response, Ms. Colson argues that her allegations at least create the reasonable inference that Nurse Russell had this state of mind, even if her pleading lacks an express allegation. [Pl.'s Resp. at 19–21]. Whether Nurse Russell's alleged reactions to Ms. Colson's injury are illustrative of subjective disregard is a fact-specific issue that requires the consideration of evidence. [*See* Pl.'s Resp. at 18]; *see also Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact[.]"); *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005)

("To ascertain whether a medical care provider rendered grossly inadequate medical care to a detainee, a court must undertake a 'particularized, fact-specific inquiry.'" (quotation omitted)).

By contending that Ms. Colson "cannot show" subjective disregard based on her allegations, [Def.'s Br. at 13], Nurse Russell ushers the Court precariously close to the resolution of factual questions, which are not open to consideration at the pleading stage, *see Grose*, 284 F. App'x at 284 (observing that the "subjective state of mind needed to trigger a clearly established constitutional violation is . . . a fact-specific inquiry which is ill-suited for . . . [a motion to dismiss]"); *see generally Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part). As the Court already concluded, Ms. Colson plausibly shows that her injury presented an obvious medical risk. This risk along with Ms. Colson's allegations that she received no medical treatment at all from Nurse Russell—apart from her performance of a "cursory" exam, [*see* Compl. ¶¶ 11, 68–69, 75, 171]—are sufficient to permit Ms. Colson to move beyond the pleading stage and to assemble evidence relating to Nurse Russell's state of mind, *see Farmer*, 511 U.S. at 842 (stating that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" (citation omitted)); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("[I]t is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" (quotation omitted)); *Miller*, 408 F.3d at 819 (acknowledging the subjective element of the deliberate-indifference analysis but noting that "this Court has held that 'less flagrant conduct may also constitute deliberate indifference in medical

9

mistreatment cases," including grossly inadequate or incompetent care (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001))). The Court will therefore decline to dismiss Ms. Colson's claim of a violation of her Eighth Amendment right to adequate medical treatment.[3]

### 2. Qualified Immunity

An affirmative defense to an alleged violation of § 1983, qualified immunity provides governmental officials and employees with "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The qualified-immunity defense shields these individuals from liability while they are performing discretionary functions, although only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A plaintiff overcomes the defense of qualified immunity by showing (1) under his version of the facts, the defendant's misconduct violated a constitutional right and (2) that constitutional right was "clearly established" when the defendant's misconduct took

---

[3] The Court would be remiss if it did not acknowledge that Nurse Russell also contends that Ms. Colson's claim requires dismissal because Ms. Colson improperly "lump[s]" allegations into Count Nine against multiple defendants. [Def.'s Reply at 6]. She argues that she lacks fair notice of the allegations against her specifically. [*Id.*]. A careful reading of the Complaint, however, shows that Ms. Colson's allegations in Count Nine—though perhaps not a model of pleading—are technically not lacking in specific allegations against Nurse Russell. Nurse Russell loses sight of the fact that Ms. Colson, by reference, incorporates paragraphs into Count Nine from the Complaint's general body, and some of these paragraphs contain allegations that are particular to Nurse Russell. [*See* Compl. ¶¶ 11, 38, 65, 68]; *see generally Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations." (emphasis added) (citation omitted)). Besides, in paragraph 171—which is part of Count Nine—Ms. Colson recites specific allegations against Nurse Russell.

place. *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011). To be a "clearly established" right, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Nurse Russell argues that her alleged conducts falls within the qualified-immunity defense's protection, [Def.'s Br. at 19–21], whereas Ms. Colson urges the Court to refrain from applying this defense at this early stage in the case, [Pl.'s Resp. at 21].

Because the Court has already determined that Ms. Colson states a viable claim under the Eighth Amendment, it is unable to jettison her claim based on the qualified-immunity defense at this time. *See Grose*, 284 F. App'x at 283 (affirming the denial of a motion to dismiss an Eighth Amendment claim and reasoning that when "allegations, if taken as true, could state a claim upon which relief may be granted, dismissal . . . on the basis of qualified immunity is premature"); *see also Peatross*, 818 F.3d at 246 (concluding that "[t]he sufficiency of the complaint requires rejection of [the defendant's] claim of qualified immunity at the dismissal stage"). In addition, the qualified-immunity defense involves a fact-intensive analysis, *Peatross*, 818 F.3d at 244 n.6, and because of its fact-intensive nature, it is typically unsuitable for deliberation at the pleading stage, *see Wesley v. Campbell*, 779 F.3d 421, 433–434 (6th Cir. 2015) (recognizing that "it is generally inappropriate" for a court to grant a motion to dismiss based on qualified immunity and that "the earliest possible point" at which a court should address qualified immunity "is usually summary judgment" (quotation omitted)); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that "it [is] difficult for a defendant to claim qualified immunity on the

pleadings *before discovery*" (citations omitted)); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").

Against Ms. Colson's plausible claim under the Eighth Amendment, Nurse Russell makes little headway in offsetting the difficulty of obtaining qualified immunity at the pleading stage. She relies on two cases that are off point because they deal with qualified immunity at the summary-judgment stage. *See Pearson v. Callahan*, 555 U.S. 233 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001). The third case that she relies on, *al-Kidd*, did result in qualified immunity at the pleading stage but only because the type of misconduct that the plaintiff alleged under the Fourth Amendment could "[not] be challenged as unconstitutional." *al-Kidd*, 563 U.S. at 744. The holding in *al-Kidd* is clearly inapplicable to the type of misconduct—inadequate medical care—that Ms. Colson complains of here under the Eighth Amendment. *See Caruso*, 284 F. App'x at 284 ("[I]t is well-settled that lack of proper medical treatment can constitute an Eighth Amendment violation." (citations omitted)); *see also Hendricks v. Mohr*, No. 2:15-cv-3130, 2017 WL 2991687, at *5 (S.D. Ohio July 14, 2017) (holding that dismissal of an Eighth Amendment claim for inadequate medical care "would be premature" on "the grounds of qualified immunity"). The Court must therefore decline to dismiss Ms. Colson's claim based on qualified immunity—but its ruling is in no way a commentary about whether Nurse Russell may be entitled to immunity should she choose to reassert this defense later in this litigation.

### B. The Remaining Counts: Counts Four, Ten, Twelve, and Thirteen

Ms. Colson informs the Court that, "[i]n an ongoing effort to narrow the issues and to more appropriately focus her claims," she now wishes to abandon her remaining claims in Count Four, Count Ten, Count Twelve, and Count Thirteen against Nurse Russell and is not opposed to their dismissal. [Pl.'s Resp. at 2]. The Court will therefore dismiss these remaining claims.

### IV. CONCLUSION

In Count Nine, Ms. Colson alleges a plausible violation of her constitutional rights under the Eighth Amendment, pleading sufficient facts of Nurse Russell's failure to provide her with adequate medical care. The Court will therefore deny Nurse Russell's request for dismissal of Count Nine, but it will dismiss, at Ms. Colson's instruction, the remaining claims against Nurse Russell. Nurse Russell's Motion to Dismiss [doc. 27] is therefore **GRANTED in part and DENIED in part**. The Court orders as follows:

1. Nurse Russell's motion is **GRANTED** as to Count Four, Count Ten, Count Twelve, and Count Thirteen, which are **DISMISSED** but only to the extent that they apply to Nurse Russell in her individual capacity. These counts remain pending in all other respects.

2. Nurse Russell's motion is **DENIED** as to Count Nine.

3. Nurse Russell **SHALL** serve a responsive pleading within fourteen days from the date of this Order.

The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge