UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANNISSA COLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-377 |
| | ) |
| CITY OF ALCOA, *el al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This civil action is before the Court for consideration of the motion for summary judgment filed by Defendant Mandy England [Doc. 138]. Plaintiff has responded [Doc. 164], and Officer England has replied [Doc. 174]. Oral argument is unnecessary, and the motion is ripe for the court's determination.

Plaintiff has filed suit pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging, violations of her constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff also raises claims under Tennessee law for assault and battery, negligence, and intentional infliction of emotional distress. For the reasons below, the motion will be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

In its memorandum opinion addressing the summary judgment motion filed by the City Defendants [Doc. 186], the Court provided an exhaustive account of the video evidence in this matter. The Court will not reiterate that background again but incorporates

the section of that memorandum opinion labeled "Body Camera Video," as if contained herein.

Plaintiff initially raised the following claims against Nurse Russell:

- Claim 3 – Excessive Force & Cruel & Unusual Punishment;
- Claim 4 – Excessive Force & Cruel & Unusual Punishment;
- Claim 9 – Failure to Provide Adequate Medical Care;
- Claim 10 – Failure to Protect;
- Claim 11 – Assault & Battery;
- Claim 12 – Intentional Infliction of Emotional Distress; and
- Claim 13 – Negligence.

[Doc. 1]. In August 2017, Officer England filed her first motion for summary judgment. [Doc. 66]. In response, Plaintiff abandoned her claim for failure to protect against Officer England. [Doc. 101 at 4, n.2]. Considering Plaintiff's abandonment of this claim, the Court will **GRANT** summary judgment on Count 10 in favor of Officer England, and Count 10 will be **DISMISSED** as to Officer England. Plaintiff also clarified that both Claims 3 and 4 were based exclusively on Officer England slapping Plaintiff across the face while Plaintiff was restrained. [*Id*. at 4, n.3].

The Court ultimately granted Officer England's first motion for summary judgment as to the excessive force claims, finding that Officer England was entitled to qualified immunity on these claims, as, under the particular facts, the law was sufficiently clear so that a reasonable officer would have understood that a slap to Plaintiff's face was not

gratuitous and did not violate her Fourth Amendment rights. [Doc. 105 at 22-23].[1] The Court, however, denied summary judgment as to Claims 9, 11, 12, and 13.

As to Claim 9, the Court concluded that the conflicting evidence regarding whether Plaintiff's knee injury would have been obvious to a layperson created a genuine factual dispute. [*Id.* at 25]. The Court also concluded that it was dubious whether Nurse Russell provided any type of medical opinion, and regardless, a genuine issue of material fact exists as to whether Officer England could reasonably have deferred to Nurse Russell's brief examination. [*Id.* at 28-29]. The Court further noted that, when the seriousness of a prisoner's need for medical care is obvious to even a lay person, a plaintiff need not show that actual harm was suffered. [*Id.* at 30]. The Court concluded that these factual questions in the record precluded the Court from granting qualified immunity to Officer England. [*Id.* at 31].

As to Claim 11, the Court noted that Officer England had not raised any argument regarding that claim, and therefore, the Court could not dismiss the claim. [*Id.* at 32-33]. As to Claim 13, the Court concluded that Officer England had not met her burden of showing that she was entitled to immunity under the TGTLA, or that there was no genuine issue of material fact on the merits of the claim. [*Id.* at 37-38]. Finally, as to Claim 12, the

---

[1] In its conclusion, the Court stated only that it granted summary judgment on Count 4 and did not make any direct statement as to whether summary judgment was granted or denied on Count 3. However, because Count 3 is also based on Officer England slapping her in the face, per Plaintiff's own response, the same analysis the Court applied to Count 4 is equally applicable to Count 3. The Court now clarifies that, in finding Officer England was entitled to qualified immunity on the excessive force claim, it also implicitly granted summary judgment on Count 3, and dismissed that claim.

Court concluded that it could not weigh the available evidence regarding Plaintiff being forced to urinate on herself, and determine whether it constitutes outrageous behavior or a reasonable response to Plaintiff's own behavior, because that task belongs to the jury. [*Id.* at 40-42].

Officer England now seeks summary judgment on all the remaining claims against her: Claims 9, 11, 12, and 13.

## I.  STANDARD OF REVIEW

Officer England's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1). This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of

a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

## II. ANALYSIS

### A. Claim 9 – Failure to Provide Adequate Medical Care

#### 1. Deliberate Indifference

The Court first notes that is has already addressed most of Officer England's regarding deliberate indifferent as to Plaintiff's knee injury and has rejected those arguments. [Doc. 105, pp. 23-31].

First, Officer England again argues that she was not deliberately indifferent because she relied upon the medical judgment of Nurse Russell and did not do anything to "intentionally deny" or "intentionally interfere" with Plaintiff's medical care. [Doc. 139, pp. 14 & 16]. Second, Officer England argues that, based on recent authorities and a more developed record, she was not deliberately indifferent despite complaints that she should have done more after Nurse Russell examined Plaintiff as she did not know about any

obvious serious medical need that required further medical treatment. [*Id*. at 17].² Third, Officer England contends that, despite allegations about a "cursory examination," she did not "consciously expose" Plaintiff to any "excessive risk of serious harm" before or after Nurse Russell's examination. [*Id*. at 19]. Fourth, Officer England contends that there is no medical proof to support that Plaintiff was exposed to an "excessive risk of harm," and Dr. Holt testified that the delay in treatment had no effect on Plaintiff's knee. [*Id*. at 22]. Finally, Officer England contends that holding her liable would amount to "second-guessing" the medical judgment of Nurse Russell and all the medical experts in this case. [*Id*.].

As Plaintiff correctly points out in her response, Officer England's argument simply re-hashes part of her qualified immunity argument from her first motion for summary judgment, but nothing she has added serves to alter the Court's prior rejection of her argument. [Doc. 164 at 16-17]. The Court has already found that Plaintiff has identified more than enough evidence establishing genuine issues of material fact in the record as to whether her injury would have been obvious to a layperson. [Doc. 105, p. 31]. The Court also determined that there is "conflicting evidence" regarding Plaintiff's knee injury which require a jury's deliberation to determine deliberate indifference. [*Id*. at 25-26]. Nothing Officer England has brought before the Court in the renewed motion for summary judgment memorandum [Doc. 139] or reply brief [Doc. 174] changes the Court's analysis

---

² Officer England also contests whether this Court's reliance on *Taylor v. Franklin Cnty*., 104 F. App'x 531, 538 (6th Cir. 2004) is misplaced. [Doc. 139, p. 18, n. 31]. However, the Court also relied on *Moore v. United States*, No. 07-14640, 2008 WL 4683425, at *2 (E.D. Mich. Oct. 22, 2008) for the same point.

and conclusions regarding deliberate indifference previously set forth. [Doc. 105, pp. 23-31].

## 2. Qualified Immunity

As the Sixth Circuit has established, "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). "Plaintiff must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at the time of the violation." *Id*. If Plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden. *Id*. "Moreover, to satisfy the second prong of the standard, plaintiff must show that the right was clearly established in a 'particularized sense,' such that a reasonable officer confronted with the same situation would have known" that their actions violated that right. *Id*.

### a. Detrimental Effect

Officer England argues that she is entitled to qualified immunity for any alleged wrongful denial of medical care because Plaintiff cannot show that she suffered any detrimental effect due to any alleged delay in treatment. [Doc. 139 at 23]. Plaintiff argues that she does not need to establish that she suffered from any "detrimental effect" with "expert medial proof," noting that this Court has already determined that a reasonable jury could find that Plaintiff had an obvious serious medical need. [Doc. 164 at 24].

In the previous order denying summary judgment, The Court paused to stress an important point: "the requirement that the record must support a substantial risk of serious

harm does not require actual harm to be suffered." [Doc. 105, p. 30] (internal quotes omitted). The Court cited several cases in support of this assertion and concluded that "the evidence shows that Ms. Colson demonstrated an obvious and serious need for medical treatment" and "that a reasonable jury could find that Officer England knew of this need and disregarded it despite having reasons to believe that the nurse rendered an unreliable medical opinion, if no medical opinion at all. [*Id*. at 30-31]. Nothing Officer England argues in her renewed motion for summary judgment memorandum [Doc. 139] or reply brief [Doc. 174] changes the Court's prior analysis and conclusion.

### b. Clearly Established Right

Officer England argues that case law supports that she is entitled to qualified immunity because she did not violate any clearly established constitutional right based on the particularized facts of this case. [Doc. 139 at 25]. Officer England cites to *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996), *Alspaugh v. McConnell*, 643 F.3d 162, 165 (6th Cir. 2011), *Loukas v. Gundy*, 70 F. App'x 245, 246 (6th Cir. 2003), and *Brooks v. Jones*, 2014 U.S. Dist. LEXIS 173968, at *15-18 (W.D. Mich. Dec. 14, 2014). [*Id*. at 25-29]. Officer England contends that, based on these cases, it is not clear that "every reasonable officer" in her position would have understood that her actions violated Plaintiff's constitutional rights. [*Id*. at 29].

Plaintiff responds that, as a pretrial detainee with an obvious and serious medical need, she had a constitutional right to medical care, and that right was clearly established. [Doc. 164 at 26]. Plaintiff contends that there is long-standing precedent establishing that a detainee has a constitutional right to medical care when an officer becomes aware that

the detainee needs medical attention. [*Id*. at 27]. Plaintiff contends that *Durham*, *Alspaugh*, *Loukas*, and *Brooks* are all distinguishable from the factual scenario in this case. [*Id*. at 29-30].[3]

Officer England replies that Plaintiff misses the point that "every reasonable officer" in defendant's position must understand that she violated a constitutional right based on existing precedent within the context of the particularized facts of the case. [Doc. 174 at 14]. Officer England contends that Plaintiff's argument is based on a high level of generality, rather than the particularized facts of the case. [*Id*.].

As noted above, Plaintiff bears the burden of establishing that Officer England is not entitled to qualified immunity and must show that the constitutional right that she alleges was violated was "clearly established." *See Chappell*, 585 F.3d at 907. In her response to Officer England's second motion for summary judgment, Plaintiff cites the following cases to support her contention that her right to adequate medical care was clearly established: *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005); *Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005); *Heflin v. Stewart Cnty.*, 958 F.2d 709 (6th Cir. 1992); and *Hopper v. Plummer*, 887 F.3d 774 (6th Cir. 2018).

In *Owensby*, the plaintiff died after restraint attempts by officers, and each of the defendants had viewed the plaintiff in physical distress, yet made no attempt to summon or provide any medical care until several minutes later, when it was discovered that the plaintiff was not breathing. 414 F.3d at 603. In evaluating whether the defendants had

---

[3] Officer England contests whether each of the cited cases are distinguishable from the instant case. [Doc. 174, pp. 15-17].

violated a clearly established right, the Sixth Circuit noted that the defendants did not dispute that in general, the Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established. *Id.* at 604. The Court then rejected the defendants' argument that the "contours" of the right were different in that case, because the plaintiff was a just-arrested, fleeing, and resisting suspect. *Id.*

In *Carter*, defendants knew that the plaintiff was exhibiting the classic symptoms of a heart attack, knew that she had cried out for help, and believed that she was three days behind on her heart medication. 408 F.3d at 310. In light of this, the Sixth Circuit concluded that the defendants' failure to order transport to take the plaintiff to the hospital violated her clearly established right to adequate medical treatment in pretrial custody. *Id.* The Sixth Circuit concluded that "[w]here the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Id.* at 313 (quoting *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972)). The Sixth Circuit then stated that, in 1992, it had explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987. *Id.* (citing *Heflin*, 958 F.2d at 717). Thus, the Court concluded, the right violated was clearly established. *Id.*

In *Heflin*, an inmate hanged himself in the shower, and officers concluded that the inmate was dead after checking his pulse and for signs of respiration, but never cut the body down from the hanging position, instead, leaving the inmate's body hanging for over 20 minutes. 958 F.2d at 711-12. The Sixth Circuit acknowledged that, for a right to be "clearly established," there must be more than a general constitutional right recognized,

but rather, the right must have been established in a "more particularized" sense. *Id*. at 717. However, the Court stated that "[i]t is not necessary that the very action in question has previously been held unlawful. Rather, the unlawfulness of the action must be apparent to the official in light of pre-existing law." *Id*. (internal quotation marks omitted). The Court then stated that "[t]here c[ould] be no doubt that in 1987 existing law clearly established the right of pretrial jail inmates to receive care for their serious medical needs." *Id*. The Court thus concluded that the unlawfulness of doing nothing to save the plaintiff's life would have been apparent to a reasonable officer in light of the pre-existing law. *Id*.

In *Hopper*, the plaintiff suffered a seizure, and both corrections officers and medical staff responded, but officers handcuffed the plaintiff behind his back and restrained him face down on the floor, causing the plaintiff to suffocate after a 22-minute struggle. 887 F.3d at 748. With regard to whether they had violated a clearly established right, the defendants argued that the case was unique because prior cases had not involved law enforcement officers working alongside qualified medical staff in dealing with an inmate not responding to commands and struggling with officers. *Id*. at 758-59. However, the Sixth Circuit pointed out that the defendants failed to discuss case law cited by the district court which discussed the "longstanding precedent establishing that a detainee has a constitutional right to medical care when an officer becomes aware that the detainee needs medical attention." *Id*. The Court noted that it had made clear that "fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury where the circumstances are clearly sufficient to indicate the need of medical attention for injury or

illness." *Id*. (internal quotation marks and alterations omitted). The Court further noted that the defendants conceded that this was a medical situation, and concluded that it "fail[ed] to see how, considering our precedent, a detainee like [plaintiff] could have no clearly established right to adequate medical care under circumstances even defendants admit indicated a need for medical attention." *Id*.

The Sixth Circuit also rejected the defendants' claim that the presence and activities of medical personnel absolved them of any liability. *Id*. The Court noted that it was "sharply disputed whether and to what extent" the defendants reasonably relied on or deferred to medical staff expertise. *Id*. at 758. The Court concluded that "[w]hen the legal arguments advanced rely entirely on a defendant's own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make." *Id*. (internal quotation marks omitted). Thus, the Court found that this was a determination for the jury. *Id*. at 759.

In light of the case law presented by Plaintiff, the Court concludes that Plaintiff has met her burden of showing that the right that was violated was "clearly established." Although Defendant England points out that Plaintiff has not cited a case with the same facts as the instant matter, the cases cited by Plaintiff make clear that Defendant England's interpretation of the "particularized" requirement is too narrow. Rather, the Sixth Circuit has repeatedly held that a pretrial detainee has a right to adequate medical care when it is obvious that the detainee needs medical attention, and has repeatedly held that this is a sufficiently particularized right to be "clearly established" within the qualified immunity framework. Notably, the Court has already concluded that Plaintiff's medical need was

obvious, therefore, given the precedent cited by Plaintiff, the Court concludes that Plaintiff's right, as a pretrial detainee, to receive *adequate* medical care, is clearly established.

The Court has carefully reviewed the cases cited by Officer England, and none of those cases compel a different conclusion. Moreover, to the extent that Officer England asserts that there was no clearly established right because she relied on Nurse Russell's assessment, the Court has previously explained why there is a genuine issue of material fact as to whether Nurse Russell provided any medical evaluation at all, much less one that Officer England could reasonably have relied upon. Accordingly, as in *Hopper*, there is a genuine issue for the jury, and the Court will not conclude that Plaintiff's right to adequate medical care was not clearly established on this ground. Therefore, the Court will **DENY** summary judgment on Count 9 as to Officer England.

### B. Claim 11 - Assault and Battery

In her response brief, Plaintiff states that she will abandon her claim for assault and battery against Officer England. [Doc. 164 at 31, n. 19]. Considering Plaintiff's abandonment of this claim, the Court will **GRANT** summary judgment on Count 11 in favor of Officer England, and Count 11 will be **DISMISSED** as to Officer England.

### C. Claim 13 - Negligence

Officer England again contends that the plain language of Tenn. Code Ann. § 29-20-205 advises that a pure negligence claim would have to be against Blount County, as immunity would be removed for such a claim. [Doc. 139, p. 30]. The Court previously rejected this claim as Officer England did not address the exception laid out in the plain

language of Tenn. Code Ann. § 29-20-205(2). [Doc. 105, p. 35]. Officer England states that, although Plaintiff may assert that, if there are civil rights violations, only Officer England may be held liable, this is contrary to Supreme Court case law holding that negligence cannot support a constitutional right or civil rights violation. [Doc. 139, p. 31]. However, once again, Officer England fails to address the exception in Tenn. Code Ann. § 29-20-205(2) which explicitly states that "immunity from suit of all government entities is removed for injury proximately caused by a negligent act or omission of an employee … except if the injury arises out of … civil rights[.]"

The Court has already determined that "[t]he question of whether 29-20-205(2)'s exception applies to any given case is a threshold legal issue under the TGTLA, and because Officer England does not address it, the Court cannot award immunity to her or consider arguments concerning the merits of the TGTLA claim." [Doc. 105, p. 37] (internal citations omitted). As Officer England has once again failed to meet her burden as the movant for summary judgment on an affirmative defense claim by not addressing the exception under 29-20-205(2), the Court again cannot award summary judgment as to Count 13.[4] *See Guthrie v. Rutherford County*, No. M2015–01718–COA–R3–CV, 2016 WL 7242815, at *3 (Tenn. Ct. App. Dec. 15, 2016) ("The question of whether the immunity has been removed from the entity being sued is a threshold determination that must be

---

[4] Officer England primarily argues that Supreme Court case law holds that negligence cannot support a constitutional rights or civil rights violation as alleged in a case. [Doc. 139, p. 31]. This argument is not persuasive as the TGTLA specifically provides an exception for negligence claims arising out of civil rights, which the Court noted prior case law determined to "mean and include claims arising under the federal civil rights laws, *e.g.*, 42 U.S.C. § 1983" [Doc. 105, p. 35, n. 21].

resolved in every TGTLA case in order to proceed to the merits of the case[.]" (citation omitted)); see also Tenn. Code. Ann. § 29-20-310(a) (providing that courts must "first determine" whether any exception under subsection 29-20-205 is "applicable to the facts" before addressing potential liability).

Previously, the Court noted that, had Officer England provided the Court with grounds to address the merits of the TGTLA claim, her argument would still fail as she did not address the three-prong test for proximate cause under Tennessee law. [Doc. 105, pp. 37-38]. Officer England again fails to reference, cite to, or argue the elements of the three-prong test for proximate cause under Tennessee law. [Doc. 139, pp. 32-33]. As Officer England essentially makes the same arguments as in her initial motion for summary judgment already rejected by the Court, the Court once again finds that Officer England fails to meet her burden as the movement for summary judgment. [*See* Doc. 105, p. 38]. Therefore, the Court will **DENY** summary judgment as to Count 13 for the same reasons it did before. [*Id.*].

### D. Claim 12 - Intentional Infliction of Emotional Distress

In her renewed motion, Officer England argues that she is not liable for intentional infliction of emotional distress ("IIED") because her conduct was not sufficiently outrageous, and Plaintiff did not suffer any serious mental injury. [Doc. 139 at 33]. She contends that she used the amount of force necessary to reasonably control Plaintiff, which is not "outrageous" behavior. Additionally, she contends that any delay in getting Plaintiff out of her own urine was not "outrageous" under the circumstances. [*Id.*]. Finally, Officer England contends that Plaintiff has not and cannot present proof of any serious mental

injury. [*Id.* at 34]. Plaintiff responds that the Court previously rejected essentially the same argument by Officer England, concluding that it could not weigh the evidence and decide whether Officer England's conduct was outrageous behavior or a reasonable response to Plaintiff's own behavior at the time, because that task belongs to the jury. [Doc. 164 at 35].

Officer England again does not address the first prong of the IIED analysis, and instead focuses on the second and third prongs. Officer England's arguments regarding the second prong are the same ones which the Court has previously denied. [Doc. 105, pp. 40-41].[5] Therefore, the Court will deny the arguments for the second prong of the IIED analysis for the same reasons as before. [*Id.*].

As to the third prong, when Officer England first moved for summary judgment regarding this count, the record was incomplete regarding expert testimony and depositions. As the Court stated above, the burden lies with the movant to show that a fact cannot be disputed. Fed. R. Civ. P. 56(c). In her renewed motion, Officer England generally points to Plaintiff's testimony, stating that Plaintiff "has had an opportunity to present proof of a 'serious mental injury'" and has not done so. [Doc. 139, p. 34].[6] Officer England does not cite to any portion of Plaintiff's testimony nor offer any other evidence that Plaintiff

---

[5] Officer England cites *White v. Trayser*, 2011 WL 1135552, at *4 (E.D. Mich. Mar. 25, 2011) to say that "an inmate being in one's urine for a brief period of time (even when the inmate is not a combative/belligerent inmate) is not a constitutional violation." [Doc. 139, p. 34]. The Court has carefully reviewed this case, and it says nothing of the sort. In *White*, the only reference to urine at *4 is a citation to: *Fackler v. Dillard,* No. 06–10466, 2006 WL 2404498, at *3 (E.D. Mich. Aug.16, 2006) (throwing a four ounce cup of urine through an inmate's food slot resulting in urine splashing on the inmate was a *de minimis* use of force). Those facts are distinctly different from the facts alleged in this case.
[6] Officer England also references the Court's previous order regarding the City of Alcoa defendants [Doc. 79] which does not address the issue of Plaintiff's urination.

has not and cannot establish serious mental injury. As the Court has previously stated, Officer England bears the initial burden to establish that the record is without evidence of a serious injury. [Doc. 105, p. 39]. Officer England again confuses the legal standard and does not meet her burden for summary judgment. The Court will therefore **DENY** Officer England's motion for summary judgment as to Count 12 for the same reasons as it has before. [*Id.*].

### E. Punitive Damages

Finally, Officer England contends that she is not liable for punitive damages under § 1983 because she did not violate any constitutional right and did not personally act in "callous disregard" of any of Plaintiff's constitutional rights. [Doc. 139 at 34]. As to the state law claims, Officer England contends that punitive damages are unwarranted because the undisputed material facts do not support that she acted intentionally, fraudulently, maliciously, or recklessly. [*Id.*].

The Court has previously granted summary judgment regarding punitive damages for the underlying negligence claim, Count 13. [Doc. 105, p. 42]. Further, as the Court has denied summary judgment as to the underlying claims of Count 12 above, Officer England is not entitled to summary judgment as to punitive damages. The Court will therefore **DENY** summary judgment for punitive damages as to Count 12.

### III. CONCLUSION

Accordingly, for the reasons stated herein, Defendant England's renewed motion for summary judgment [Doc. 138] will be **GRANTED in part** and **DENIED in part**. Specifically, the Court will rule on summary judgment as follows regarding each count:

1. **GRANTS** summary judgment as to Count 3.

2. **DENIES** summary judgment as to Count 9.

3. **GRANTS** summary judgment as to Count 10.

4. **GRANTS** summary judgment as to Count 11.

5. **DENIES** summary judgment as to Count 12.

6. **DENIES** summary judgment as to punitive damages for Count 12.

7. **DENIES** summary judgment as to Count 13.

An order consistent with this opinion will be entered.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge